**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MANSOUR MOHAMMAD, #Y15873,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 19−cv−00756−SMY |
| | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **IDOC,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **LIEUTENANT MORRIS,** | ) | |
| **C/O WILSON,** | ) | |
| **C/O REPELL,** | ) | |
| **T. BRADLEY,** | ) | |
| **LIEUTENANT COLEMAN,** | ) | |
| **SARAH JOHNSON,** | ) | |
| **JOHN DOE,** *Unknown Officers,* | ) | |
| **JOHN DOE,** *Unknown Directors &* | ) | |
| *Wardens of Programs,* | ) | |
| **JOHN DOE,** *Unknown Chaplains,* | ) | |
| **JOHN DOE,** *Unknown Doctors,* | ) | |
| **JOHN DOE,** *Unknown Nurses,* **and** | ) | |
| **LOUIS SHICKER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Mansour Mohammad, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Western Illinois Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was in custody at Menard Correctional Center ("Menard"). Plaintiff alleges that due to overcrowding at Menard, he was subjected to unconstitutional living conditions, denied medical care, and denied the ability to practice his religion. He requests money damages.

1

Plaintiff's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court will also determine whether misjoinder is an issue and retains authority to sever unrelated claims against different defendants into one or more additional lawsuits. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2001).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Due to overcrowding at Menard, Plaintiff has been subjected to inhumane living conditions and deprived of basic human needs. *Id.* at p. 8. Because of various reports and lawsuits pertaining to the conditions at Menard, IDOC knows that overcrowding threatens the safety of inmates and has caused understaffing in the health care unit, deterioration to the facility, inmates to be provided inadequate clothing for winter temperatures, and the lack of adequate cleaning supplies, bedding, and programming. *Id.* at pp. 24, 32.

### Failure to Treat Medical Condition

Plaintiff has difficulty breathing and developed asthma because of mold in the cells and showers, asbestos and asbestos removals, lack of ventilation, and exposure to toxic substances in the air at Menard. *Id.* at p. 8. His health problems have also increased because he is experiencing harmful side effects from the frequent use of his inhaler, which contains Xopenex HFA. These

side effects include chest pain, dizziness, fast heart rate, and shortness of breath. *Id.* at pp. 11-12. Several other inmates in his cell house also have trouble breathing and have had to receive emergency medical assistance because of breathing complications. *Id.* at p. 9.

On May 24, 2017, Plaintiff began coughing up a thick dark colored mucous and having trouble breathing, chest pain, and throat irritation. He submitted two sick calls, and on May 26, 2017, was called to see a screening nurse who immediately sent him to a doctor at Menard. *Id.* at p. 8. Plaintiff was diagnosed with a respiratory infection and had to be injected with antibiotics and steroids because his lungs were collapsing. He was prescribed breathing medications and scheduled for a follow-up visit in three days. *Id.* at pp. 8-9.

Plaintiff's symptoms did not improve with the medication and he continued having trouble breathing. *Id.* at p. 10. On the day of Plaintiff's scheduled follow-up appointment, he was not called by the doctor, and his sick-call pass that indicated "must honor" was disregarded.

On two different occasions, Plaintiff notified Defendants Lieutenant Morris and Officer Wilson that he was still having trouble breathing. He was told by both officers that they would notify someone, but Plaintiff did not receive medical attention. *Id.* at p. 10. Plaintiff also submitted an emergency grievance to Defendant Warden Lashbrook, informing her that he and several other inmates were having trouble breathing. *Id.* at p. 9. The grievance was returned as a non-emergency with instructions to resubmit the grievance through the normal process. *Id.*

On June 8, 2017, Plaintiff submitted a sick call but did not receive an appointment until June 15, 2017. Plaintiff was seen by a nurse who told him that his difficulties breathing were due to allergies and prescribed ibuprofen and chlorphenamine for nasal congestion. *Id.* at p. 11, 21. Plaintiff told the nurse that he did not have nasal congestion, but nothing was done about his breathing complications.

Plaintiff was seen on July 5, 2017 by a doctor. He told the doctor he was still having trouble breathing, but the doctor said there was nothing else that they could do for him. He was not given anything for the infection. *Id.* at pp. 11, 21, 22.

In May 2018, Plaintiff got an infection in his hand from cleaning the inside of his toilet without protective gloves or a toilet brush. *Id.* at p. 17, 22. His fingers became swollen, filled with green fluid, throbbed, and leaked puss. *Id.* Plaintiff submitted two sick-calls; one on May 17, 2018 and the other May 21, 2018. but did not see a nurse until May 23, 2018. The nurse gave Plaintiff nothing for the infection, swelling, or pain. *Id.* The nurse dropped off band-aids the next day, but the infection did not improve. *Id.* at p. 23.

Plaintiff submitted another sick-call slip on June 8, 2018 and saw a nurse three days later. The nurse told him the infection would heal on its own, and even though he was not given any medication or treatment, he was still charged a $5 co-pay.

**Extreme Temperature Conditions**

Menard cell houses are excessively hot in the summer and extremely cold in the winter. *Id.* at p. 13. The heat causes Plaintiff to continually sweat and feel sluggish, fatigued, and dizzy. It also aggravates Plaintiff's asthma and he is forced to use his inhaler more than normal, subjecting him to the risk of permeant injury or death due to the side effects caused by Xopenex HFA. Plaintiff only receives a cup of ice in the morning and one cup in the evening and has a portable fan that he "has to hug all day." *Id.*

Inmates at Menard are typically in their cells for twenty-three hours a day, except for two days a week when they are allowed to go to the yard or gym. In 2017, Menard was on lockdown for most of the summer and Plaintiff was forced to sit in an extremely hot cell for twenty-four hours a day. *Id.* at p. 14. Because of the heat, Plaintiff showers more and goes through bars of

4

soap faster. However, he is only allowed to buy six bars of soap a month, making it difficult for him to keep up with his hygiene. Plaintiff often skips meals because the chow hall has only one working fan making the room extremely hot. *Id.* Plaintiff submitted emergency grievances regarding these conditions to Warden Lashbrook on several occasions, but never received a response. *Id.* at p. 15.

Plaintiff's cell house is extremely cold in the winter. In January 2019, Plaintiff spoke to Defendants Officer Repell and Lieutenant Coleman and other officers complaining about the cold, but the temperature did not increase. *Id.* at pp. 15, 16. When he asked Lieutenant Coleman for a blanket, he was told no. *Id.* at p. 16. It was so cold in the cell house that Officer Repell and other officers wore coats and winter hats or some type of extra layers. Officers also kept turning on the fans, making it even colder. Plaintiff wrote a grievance and Defendant Counselor Bradley responded that the temperature is daily monitored, but did not act to help Plaintiff or other inmates combat the cold. Due to the cold, Plaintiff became sick and suffered from cold sweats, coughing, running nose, and body aches. *Id.* at p. 15.

**Cleaning Supplies**

Plaintiff has not been provided adequate cleaning supplies since arriving at Menard in 2016. *Id.* at p. 17. He is only given cups of diluted bleach once a week. He does not receive cleaning supplies such as towels, mop, broom, toilet brush cleaner, or protective cleaning gloves. Because Plaintiff has not been given proper supplies, he contracted an infection in his hand from cleaning the toilet without gloves. Additionally, mildew and mold around the toilet, sweat from the windows, dust, food crumbs, dirt, shed hair, and skin particles collect and make for filthy living conditions, contributing to Plaintiff's poor health. *Id.* Plaintiff wrote an emergency grievance to Warden Lashbrook regarding the lack of adequate cleaning supplies, but the grievance was deemed

5

a non-emergency and he did not receive any cleaning supplies. *Id.* at p. 18.

### Diet

Menard serves "massive amounts" of soy in the meals and has repeatedly served expired food, which has caused Plaintiff to become ill. In June, July, and September 2018, Menard served expired yogurt on multiple occasions. *Id.* at p. 19. This caused Plaintiff to vomit and have irregular bowels for which he was prescribed medication. Menard also often serves spoiled milk. Plaintiff filed a grievance and dietary responded, but continues to serve unsafe food. *Id.*

### Footwear

Upon arriving at Menard in 2016, Plaintiff did not receive boots to combat the cold, snowy, wet, winter weather conditions. *Id.* at p. 19. He has an ankle that swells and aches from a previous injury if his feet get wet. The pain from his ankle also causes the lower part of his legs to ache. *Id.* at p. 20. When Plaintiff requested boots, he was told that boots are only for workers. He has repeatedly submitted requests for boots, but was never provided a pair. During recreational time in the yard, the snow and rain soaked through Plaintiff's shoes and has caused him to become sick.

In March 2018, Plaintiff showed Lieutenant Morris that the sole of his shoe was coming off. Morris told Plaintiff that he would take him to the clothing house for boots. Plaintiff again submitted a slip for boots which was placed in Morris's mail box, but Morris never sent him to the clothing house. *Id.* at p. 20.

### Religious Practices

Plaintiff is of the Muslim faith. Menard provides certain faith related services, materials, and celebrations to Christian inmates that are denied to Muslim inmates. Specifically, Menard: only allows Plaintiff and other Muslim inmates to attend Jumu'ah service once a month, not every Friday as required under the Quran; stops Islamic congregational services during Ramadan and

makes Muslim inmates observe Ramadan in their cells; does not allow inmates to gather for Eid al-Fitr feast or congregational prayer at the end of Ramadan; does not provide Islamic materials and books other than the Quran; and does not provide an imam to assist Muslims in the practice of the Islamic faith. *Id.* at pp. 25-26.

Plaintiff submitted requests and grievances requesting to be placed on the list to attend monthly Jumu'ah services, but they went ignored and Menard would not place him on the list. *Id.* at p. 26. When Plaintiff has submitted requests regarding the ability to practice his faith, there is a "grave lag in time before anything is done, if anything is done." When Plaintiff asked to attend Taleem services on Mondays, it took almost a year for him to be placed on the list. These services were also repeatedly canceled. Christian services would still be held on those days when the Islamic services were canceled. *Id.*

In February 2019, Plaintiff and other Muslim inmates within the same cell house filed group organized grievances addressing the hinderances Menard is placing on those who practice Islam. *Id.* at p. 27. All inmates who participated in writing the grievances, including Plaintiff, were taken off of the list to attend a Taleem service. When Plaintiff submitted a request to the chaplain to ask why he was taken off of the list, the response stated, "removed for non-compliance" and was attached to a Christian informational pamphlet. Plaintiff again was removed from the list to attend services in March 2019 for no reason. When Plaintiff submitted another request to the chaplain to be put on the list to attend, the chaplain responded that he cannot resubmit until May 1, 2019, and the response was again attached to a Christian pamphlet. *Id.*

**Preliminary Dismissals**

As an initial matter, Plaintiff makes numerous allegations against IDOC. However, IDOC is a state government agency and is not a person subject to suit for money damages under § 1983.

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-71 (1989); *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012). Therefore, IDOC will be dismissed with prejudice.

Similarly, Plaintiff attempts to bring claims against Defendants in their individual and official capacities. (Doc. 1, p. 1). Because he is seeking only monetary damages, *Id.* at p. 33, the official capacity claims directed against these individuals will be dismissed with prejudice. *See Will,* 491 U.S. at 71; *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

Plaintiff asserts an intentional infliction of emotional distress claim which will also be dismissed. (Doc. 1, p. 32). Most of his allegations are directed at IDOC, who he claims knowingly subjected him "to extreme and severe emotional distress by housing [him] in an overcrowded facility[,]" and as a result "was forced to suffer unnecessarily in severe emotional distress." *Id.* Also, in one conclusory sentence, he alleges that "all Defendants" are liable for intentional infliction of emotional distress because they were deliberately indifferent. *Id.*

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill*., 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi*., 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988).

Plaintiff's Complaint offers insufficient allegations to support this claim. Although the Court is obligated to accept factual allegations as true, some factual allegations are so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578

F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* Plaintiff's claim that all defendants are liable for intentional infliction of emotional distress is not a factual recitation, but a conclusory statement that does not meet the pleading standards articulated in *Twombly* and *Iqbal*. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009); FED. R. CIV. P. 8. For the above reasons, Plaintiff's intentional infliction of emotional distress claims will be dismissed.

Finally, Plaintiff attempts to hold all individuals employed by the Administrative Review Board ("ARB") who reviewed and responded to any and all grievances relating to the constitutional violations detailed in the Complaint liable. (Doc. 1, p. 31). He claims board member Sarah Johnson was made aware and had knowledge of the constitutional violations in the grievances (which is proven by her signature) but took no action to prevent or rectify the injury. *Id.* These claims will be dismissed as well.

The individual employees of the ARB are not listed as defendants in the case caption, and the Court will not treat individuals not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Also, inmates do not have a constitutional right to an effective grievance procedure. *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, the fact that prison officials denied, mishandled, or refused to consider grievances or claims raised by grievances, "who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Plaintiff claims Sarah Johnson's liability is based on the fact that he appealed to the ARB and she signed the response. Although, a prisoner's correspondence to a prison supervisor may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient

knowledge of a constitutional deprivation[,]" *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015), deliberate indifference is more than simple administrative review. *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir.2009). The Seventh Circuit has rejected the idea that liability extends to every prison official who is aware of an inmate's complaints. *Id.* at 596. Furthermore, Plaintiff's claim that Johnson "was made aware and had knowledge of all constitutional violations," Doc. 1, p 31, is merely a conclusory recital "of the elements of a cause of action, supported by mere conclusory statements" that does not suffice to state a claim plausible on its face. *Iqbal,* 129 S. Ct. at 1949. Accordingly, claims against the employees of the Administrative Review Board and Sarah Johnson will be dismissed. Because there are no other claims against her, Sarah Johnson will be dismissed from the Complaint without prejudice.

## Discussion

Based on the allegations in the Complaint, the Court designates the following Counts in this *pro se* action:

**Count 1:** Eighth Amendment claim of overcrowded conditions at Menard, which subjected Plaintiff to unconstitutional conditions of confinement.

**Count 2:** Eighth Amendment conditions of confinement claim against Lashbrook, Repell, Bradley, Coleman, Morris, and John Doe Unknown Officers for failing to act and provide safe living conditions, specifically regarding maintaining the facility at extreme temperatures, not providing cleaning supplies or a sanitary living environment, serving unhealthy/expired food, and inadequate footwear.

**Count 3:** Eighth Amendment deliberate indifference to a serious medical need against Lashbrook, Wexford, Shicker, Morris, Wilson, John Doe Doctors, and John Doe Nurses for failing to adequately treat Plaintiff's respiratory infection, asthmas and breathing complications.

**Count 4:** Eighth Amendment deliberate indifference to a serious medical need against Wexford, Shicker, and John Doe Nurses for failing to adequately treat Plaintiff's infected hand.

**Count 5:** Eighth Amendment claim against Lashbrook for overcrowded conditions at

|            | Menard, which caused delays in receiving treatment for his respiratory infection, asthma, breathing complications, and infected hand. |
|---|---|
| **Count 6:** | First Amendment free exercise of religion against Lashbrook, John Doe Chaplains, and John Doe Directors/Wardens of Programs. |
| **Count 7:** | First Amendment free speech claim against Lashbrook, John Doe Chaplains, and John Doe Directors/Wardens of Programs. |
| **Count 8:** | Religious Land Use and Institutionalized Persons Act (RLUIPA) claim against Lashbrook, John Doe Chaplains, and John Doe Directors/Wardens of Programs. |
| **Count 9:** | Fourteenth Amendment equal protection claim against Lashbrook, John Doe Chaplains, and John Doe Directors/Wardens of Programs for providing Christian inmates with resources such as a chaplain, literature, and the ability to attend services that are not made available to Plaintiff, as a Muslim inmate. |
| **Count 10:** | Eighth Amendment claim against Lashbrook for overcrowded conditions at Menard that resulted in the inability to accommodate Plaintiff with the required religious services. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.[1]**

### Severance

Rule 20 of the Federal Rule of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. As such, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507

---

[1] *See Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

F.3d at 607. The Seventh Circuit Court of Appeals has emphasized that unrelated claims against different defendants belong in separate lawsuits "… also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*., citing 28 U.S.C. § 1915(b), (g). While Rule 18 allows a party to join unrelated claims against defendants in a lawsuit, it applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc*., 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*).

Here, Plaintiff attempts to bring three distinct sets of claims against different groups of defendants. Counts 1-2 relating to conditions of confinement, Counts 3-5 relating to medical care, and Counts 6-10 relating to free exercise of religion are unrelated and arise out of different transactions. Although Plaintiff attempts to link all these claims by stating that an underlying cause for each claim is overcrowding at Menard, this is not enough to escape severance. The Supreme Court has held that prison overcrowding, standing alone, does not violate the Eighth Amendment. Rather, Plaintiff bears the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other necessities. *Rhodes v. Chapman,* 452 U.S. 337, 348 (1981). Not all of his overcrowding claims are even brought against the same defendants.[2] Accordingly, the Court exercises its authority under Rule 21 and severs the improperly joined claims; Counts 3-5 and 6-10 shall be severed into two separate actions. Counts 1 and 2 will be addressed in this case and reviewed pursuant to § 1915A.

---

[2] Overcrowding relating to conditions of confinement claim in Count 1 is brought against IDOC, and claims that overcrowding has led to medical and religious constitutional violations are brought against Lashbrook in Counts 5 and 10.

**Count 1**

The Eighth Amendment sets a "minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve 'the wanton and unnecessary infliction of pain.'" *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Rhodes,* 452 U.S. at 347.) Prison overcrowding is not a *per se* constitutional violation and an inmate's constitutional challenge based on overcrowding must meet two requirements. *See Rhodes,* 452 U.S. at 348 (1981); *Townsend,* 522 F.3d at 773. First, Plaintiff must establish that the prison was overcrowded, and that the overcrowding led to intolerable conditions, such as the deprivation of medical care, food, sanitation, or an increase in violence (objective component). *Id.; see also French v. Owens,* 777 F.2d 1250, 1253 (7th Cir. 1985). Second, Plaintiff must demonstrate that the defendant acted with deliberate indifference with respect to the conditions (subjective component). *Townsend,* 522 F.3d at 773 (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

Here, Plaintiff alleges Menard is overcrowded and that overcrowding has led to his constitutional deprivations, including inhumane living conditions. (Doc. 1, pp. 8, 24, 32). The Court notes that this allegation is directed against IDOC only, which has been dismissed from this action with prejudice. Moreover, Plaintiff provides no causal link between overcrowding and the alleged inhumane conditions: extreme temperature, unsafe food, unsanitary cell conditions, and inadequate footwear. As such, Plaintiff fails to state a viable claim and Count 1 will be dismissed without prejudice.

**Count 2**

The Eighth Amendment's protection against cruel and unusual punishment extends to conditions of confinement that pose a substantial risk of serious harm to a prisoner's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prison

officials "violate the Eighth Amendment if they are deliberately indifferent adverse conditions that deny 'the minimal civilized measure of life's necessities[.]'" *Budd v. Motley,* 711 F.3d 840, 842 (7th Cir., 2013) (quoting *Farmer,* 511 U.S. at 834.)   To establish a constitutional violation, a plaintiff must prove: (1) that his living conditions were sufficiently serious; and (2) that defendant acted with deliberate indifference. *Farmer,* 511 U.S. at 834. In that regard, the Seventh Circuit has observed that "conditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd*, 711 F.3d at 842 (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991).

Plaintiff has alleged conditions that collectively support a claim for unconstitutional conditions of confinement. He claims that most days in the summer months, he was kept in his cell for twenty-three hours a day in extreme heat with no ventilation, and that there were days during the winter when there was no heat at all, that officers would turn on fans in the cellhouse, and that he was not supplied a blanket or adequate clothing and footwear. Plaintiff further alleges that he was required to live in filthy living conditions and was denied adequate cleaning supplies. (Doc. 1, p. 17). *See Farmer,* 511 U.S. at 834; *Budd,* 711 F.3d at 842. In combination, these allegations are sufficiently serious to support a constitutional claim against Defendants Repell, Bradley, Morris, Coleman, and Lashbrook.

However, these claims cannot be pursued against John Doe Unknown Officers. While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of correctional officers violated his constitutional rights. *See Brooks*, 578 F.3d at 580 (finding the phrase "one or more of the Defendants" did not adequately connect

specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Thus, Plaintiff must make plausible allegations against individuals. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Count 2 will be dismissed as to John Doe Unknown Officers.

Plaintiff's claims regarding being served expired yogurt, a predominately soy diet, and spoiled milk will be dismissed as well. Plaintiff alleges that John Doe dietary officer was negligent in ensuring that the kitchen served safe food causing him harm and sickness. (Doc. 1, p. 19). But deliberate indifference requires "more than 'mere negligence,'" *Wynn,* 251 F.3d at 593 (quoting *Farmer*, 511 U.S. at 836). Also, because "John Doe dietary officer" is not named as a defendant in the case caption, any claims against him must be dismissed. *See Myles,* 416 F.3d at 551–52.

## Disposition

For the foregoing reasons, **IT IS ORDERED** that all claims against **IDOC** are **DISMISSED** with prejudice; all claims against Defendants in their official capacities are **DISMISSED** without prejudice; and all claims against **JOHNSON** are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to terminate **IDOC** and **JOHNSON** as Defendants in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that **COUNTS 3, 4, 5, 6, 7, 8, 9,** and **10** are **SEVERED** into two new cases, as follows:

> **First Severed Case:** Counts 3, 4, and 5 against Lashbrook, Wexford, Shicker, Morris, Wilson, John Doe Unknown Doctors, and John Doe Unknown Nurses.
>
> **Second Severed Case:** Counts 6, 7, 8, 9, and 10 against Lashbrook, John Doe Unknown Chaplains, and John Doe Unknown Directors/Wardens of Programs.

The claims in each newly severed case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In each new case, the Clerk is **DIRECTED** to file the following documents:

- The Complaint (Doc. 1);
- Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 6); and
- This Memorandum and Order.

The **only claims remaining in this action are COUNTS 1 and 2**. The Clerk of Court is **DIRECTED** to terminate **WEXFORD HEALTH SOURCES, INC., WILSON, JOHN DOE UNKNOWN** *Directors/Wardens of Programs*, **JOHN DOE** *Unknown Chaplains*, **JOHN DOE** *Unknown Doctors*, **JOHN DOE** *Unknown Nurses,* and **SHICKER** as parties in this action.

**IT IS HERE BY ORDERED** that the Complaint survives screening pursuant to § 1915A. **COUNT 1** is dismissed without prejudice for failure to state a claim upon which relief may be granted. **COUNT 2** shall proceed against **REPELL, BRADLEY, MORRIS, COLEMAN,** and **LASHBROOK. COUNT 2** is **DISMISSED** as to **JOHN DOE UNKNOWN OFFICERS.** Because there are no other claims against **JOHN DOE UNKNOWN OFFICERS** in this action, the Clerk of Court is **DIRECTED** to terminate them in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** the Clerk of Court shall prepare for **REPELL, BRADLEY, MORRIS, COLEMAN,** and **LASHBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer

shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

**IT IS ALSO ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 5, 2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**