IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MANSOUR MOHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   19-cv-756-RJD |
| | ) | |
| JACQUELINE LASHBROOK, TIMOTHY MORRIS, REGGIE EPPLIN, LT. EUGENE SIMPSON, and LLOYD HANNA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Lashbrook, Morris, Epplin, and Simpson (Doc. 74). For the reasons set forth below, the Motion is **GRANTED**.

**Factual Background**

Plaintiff Mansour Mohammad, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). In his complaint, Plaintiff alleges he was housed in extreme temperature conditions, was not provided cleaning supplies, served expired and otherwise unsafe food, and did not receive adequate footwear while at Menard. Plaintiff's amended complaint was screened pursuant to 28 U.S.C. § 1915A and he is proceeding on the following claims:

> Count One: Eighth Amendment claim against Epplin, Simpson, and Lashbrook for failing to act and provide safe living conditions with regard to the extreme temperatures in the cell house.

      Count Two:    Eighth Amendment claim against Lashbrook for failing to act and provide safe living conditions for not providing adequate cleaning supplies or sanitary living environment.

      Count Three:    Eighth Amendment claim against Hanna for serving unhealthy/expired food.

      Count Four:    Eighth Amendment claim against Morris and Lashbrook for failing to provide proper footwear for frigid, wet weather conditions causing Plaintiff to suffer from ankle and leg pain and to become ill.

(*See* Docs. 67, 88 and 89).

Defendants Lashbrook, Morris, Epplin, and Simpson filed a motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 74)[1]. In their motion, Defendants assert Plaintiff submitted seven grievances to the ARB relating to the claims in this case. However, Defendants assert these grievances were not fully and properly exhausted. Plaintiff disagrees, and asserts he fully exhausted his available administrative remedies. The relevant grievances are set forth below:

    1. Grievance #314-1-19 dated January 12, 2019 (Doc. 75-3 at 20): In this grievance, Plaintiff complains it has been extremely cold in the west cell house and that he has caught a cold as a result. Plaintiff's counselor responded to this grievance on January 18, 2019. It was received by the ARB on January 31, 2019, and returned to Plaintiff without a decision on the merits. Plaintiff was advised to provide a copy of the Grievance Officer's and Chief Administrative Officer's (CAO) responses (*see* Doc. 75-3 at 19). In response to Defendants' motion, Plaintiff asserts he submitted this grievance to the Grievance Officer after he received the counselor's response, but it was returned unanswered.

    2. Grievance 199-10-18 dated October 1, 2018 (Doc. 75-3 at 28): In this grievance, Plaintiff complains that the milk and yogurt served by the kitchen is expired. Plaintiff asserts this occurred in June and July 2018, and continued into September 2018. Plaintiff indicates the milk does not have an expiration date, but is sometimes lumpy and spoiled. Plaintiff's counselor responded to this grievance on October 11, 2018. This grievance was received by the ARB on October 29, 2018 and it was returned to Plaintiff without a decision on the merits. Plaintiff was

---

[1] Defendant Hanna was identified and served with the complaint following the filing of Defendants' motion. However, Defendant Hanna did not move to join in the motion, and pursuant to the Court's Initial Scheduling and Discovery Order, any new party only has 60 days from the date of their answer to file amotion for summary judgment for failure to exhaust administrative remedies. In this instance, Hanna filed his answer on October 25, 2021 (*see* Doc. 102).

advised to provide a copy of the Grievance Officer's and CAO's responses (*see* Doc. 75-3 at 27). In response to Defendants' motion, Plaintiff asserts he submitted this grievance to the Grievance Officer after he received the counselor's response, but it was returned unanswered.

      3.  Grievance 511-9-18 dated September 20, 2018 (Doc. 75-3 at 25-26):  In this grievance, Plaintiff complains about the high temperatures in the cellhouse.  Plaintiff asserts many of the fans in the chow hall are inoperable.  Plaintiff's counselor responded to this grievance on October 9, 2018.  The ARB received this grievance on October 29, 2018, and returned it to Plaintiff without a decision on the merits.  Plaintiff was advised to provide a copy of the Grievance Officer's and CAO's responses (*see* Doc. 75-3 at 24).  In response to Defendants' motion, Plaintiff asserts he submitted this grievance to the Grievance Officer after he received the counselor's response on two occasions, but it was twice returned to him without a response.

      4.  Emergency grievance dated July 21, 2018 (no facility grievance number) (Doc. 69 at 20-21):  In this grievance, Plaintiff complains that it is extremely hot in the cell house and chow hall.  On this grievance, Plaintiff wrote that it is a copy of the original, and also indicated that it was the third grievance that addressed the issue.  This grievance was received by the ARB on September 14, 2018, along with a letter from Plaintiff dated September 11, 2018.  In his letter, Plaintiff indicated he had submitted three emergency grievances throughout the summer concerning the extremely hot temperatures, but never received a response or confirmation receipt.  The ARB returned this grievance to Plaintiff without a decision on the merits.  Plaintiff was advised to provide a copy of his counselor's, Grievance Officer's, and CAO's responses (*see* Doc. 69 at 18).

      5.  Emergency grievance 448-1-18 dated January 23, 2018 (Doc. 75-3 at 37-38):   In this grievance, Plaintiff complains that despite Menard being on quarantine due to illness he is only provided one cup of bleach mixed with water once a week to clean his cell.   Plaintiff asserts he is not provided adequate cleaning supplies, and has not been provided with cleaning towels, rags, a broom or mop, or a toilet brush.   The CAO found an emergency was not substantiated on January 25, 2018, and Plaintiff's counselor responded on February 2, 2018.  The ARB received this grievance on February 27, 2018, and returned it to Plaintiff without a decision on the merits. Plaintiff was advised to provide a copy of the Grievance Officer's and CAO's responses (*see* Doc. 75-3 at 36).  In response to Defendants' motion, Plaintiff asserts he submitted this grievance to the Grievance Officer after he received the counselor's response, but it was returned to him without a response.

      6.  Grievance 450-1-18 dated January 23, 2018 (Doc. 75-3 at 43-44):  In this grievance, Plaintiff complains that Menard is not providing boots during the winter months and not selling boots at commissary.  Plaintiff's counselor responded to this grievance on January 24, 2018. The ARB received this grievance on February 9, 2018, and returned it to Plaintiff without a decision on the merits.  Plaintiff was advised to provide a copy of the Grievance Officer's and CAO's responses (*see* Doc. 75-3 at 42).  In response to Defendants' motion, Plaintiff asserts he did not submit this grievance any further because he had been advised there were not any boots in stock, thus, there was no further relief he could receive.

7. Grievance 20-12-16 dated November 7, 2016 (Doc. 75-3 at 50-51):  In this grievance, Plaintiff complains that when he arrived at Menard he was only provided one sheet, and no boots or laundry bag.  Plaintiff complains that winter is approaching and he will have to wear gym shoes.  Plaintiff's counselor responded to this grievance on November 30, 2016.  The Grievance Officer recommended that the grievance be found moot on December 7, 2016, and the CAO concurred on December 12, 2016 (*see* Doc. 75-3 at 49).  The ARB received this grievance on January 17, 2017, and returned it without a decision on the merits.  Plaintiff was advised that the grievance was not submitted in the timeframe outlined in Department Rule 504 (*see* Doc. 75-3 at 48).

Defendants assert these grievances do not exhaust the claims in this lawsuit because, with the exception of the grievance dated November 7, 2016, Plaintiff failed to submit these grievances to a Grievance Officer as required by the grievance procedures.  Defendants also assert that Plaintiff's November 7, 2016 grievance was not exhausted because Plaintiff failed to appeal the CAO's decision to the ARB within 30 days.

In response to Defendants' motion, Plaintiff asserts there are genuine disputes as to whether he exhausted the administrative remedies available through the prison's grievance process.  Plaintiff also asserts there are genuine disputes as to whether he appealed his grievance dated November 7, 2016 in a timely manner.  Plaintiff's response addresses each of the grievances referenced by Defendants, as well as another grievance dated April 5, 2018 wherein he complained that he was not provided with boots, despite requests for the same.  Plaintiff's counselor responded to this grievance on April 25, 2018.  There is no other documentation concerning this grievance.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on February 7, 2022.  At the hearing, Plaintiff reiterated much of his argument in his response brief.  More specifically, Plaintiff testified he had difficulty getting his grievances addressed by the Grievance Officer.  Plaintiff testified that he submitted his September 20, 2018, October 1, 2018, January 23, 2018, and January 12, 2019 grievances immediately to the Grievance

Officer after receiving the counselor's response, but his grievances went unanswered. Although it was not entirely clear from his testimony, Plaintiff made reference to receiving his grievances back from the Grievance Officer, but without a response.

Plaintiff also testified that he included a note on his July 21, 2018 grievance indicating this was his third attempt to address the issues and that he had not yet received any response. Plaintiff included a letter with his July 21, 2018 grievance addressed to the ARB indicating he was having difficulty getting his grievances addressed.

Plaintiff testified there were times when his grievances were stamped as "Received", but he still would not receive a response from the Grievance Officer. Plaintiff noted in particular his September 20, 2018 grievance was stamped as "Received" on September 25, 2018, and his January 23, 2018 grievance was stamped on both January 24, 2018 and January 31, 2018.

With regard to his November 7, 2016 emergency grievance, Plaintiff testified the CAO responded on December 12, 2016. Plaintiff then signed this grievance for appeal on January 3, 2017. Plaintiff testified he placed his grievance in the bars of his cell to be mailed to the ARB on January 3, and he had no control over when it was received by the ARB.

Finally, Plaintiff testified he did not take any further action with his April 5, 2018 grievance after receiving the counselor's response because boots were no longer an issue during that time of year.

Kelly Pierce, a Grievance Officer at Menard, also testified at the hearing. Pierce testified there was no indication in Plaintiff's Cumulative Counseling Summary that he submitted a grievance for second-level review by the Grievance Officer in January, February, April, May, June, July September, or October 2018, or January 2019. Pierce also testified that when the Grievance Office received a grievance, there would be an entry in an inmate's Cumulative

Counseling Summary, and a receipt would be mailed to the inmate. The grievance would also be stamped as "received" upon receipt for first level (counselor) review, and again when it was received for review by the Grievance Officer. With regard to Plaintiff's November 7, 2016 grievance, Pierce testified she did not know when it was placed in the mail directed to the ARB.

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not

properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a

substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

## Discussion

Based on the evidence in the record and in consideration of the parties' arguments, the Court finds Plaintiff failed to exhaust his claims prior to filing this lawsuit.

First, with regard to Plaintiff's grievances dated January 12, 2019, October 1, 2018, September 20, 2018, and his January 23, 2018 emergency grievance, the Court cannot find Plaintiff's testimony concerning his efforts to exhaust credible. Plaintiff testified he submitted these grievances to the Grievance Officer "immediately" after receiving the counselor's response. Aside from generally remarking in his response to Defendants' motion that these grievances were returned from the Grievance Officer unanswered, he has not provided any evidence to corroborate the same. Indeed, at the hearing, Plaintiff's testimony regarding this point was not entirely clear, and he certainly failed to set forth, with any detail, when and how these grievances were returned unanswered. Further, based on Kelly Pierce's testimony, the Court finds the "receipts" from the Grievance Office mentioned in Plaintiff's response to Defendants' motion indicate receipt for first-level review (counselor), not Grievance Officer review (*see* Doc. 103 at 42, 58), as erroneously stated by Plaintiff. Pierce also testified that when a grievance is received for second-level review by a Grievance Officer, a second "Received" stamp is placed on the

grievance, and the Court finds no evidence of the same here[2]. The Court also notes Plaintiff failed to mention any issue concerning the return of unanswered grievances in his complaint, and only indicated that he received "no results or desired results" (Doc. 1 at 7). Thus, the Court does not credit Plaintiff's assertions regarding the return of these grievances unanswered based on a review of the totality of evidence in the record, and finds he was not thwarted in his efforts to exhaust the same.

Plaintiff also argues he was not required to exhaust the normal administrative review channels for his January 23, 2018 emergency grievance despite his efforts to do the same. The Court finds this argument is without merit. 20 ILCS § 504.840 provides that:

An offender may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer.

> a) If there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis.
>
> […]
>
> c) If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process.

Subsection (c) effectively mandates that after the CAO determines a grievance should not be handled on an emergency basis, the grievance must be resubmitted as non-emergent in accordance with the standard grievance process. In this instance, Plaintiff was directed by the CAO to submit his grievance according to the standard grievance procedure. Although Plaintiff

---

[2] The only grievance with two facility date stamps that may be attributable to the Grievance Office is Plaintiff's January 23, 2018 emergency grievance. The first stamp, dated January 24, 2018 coincides with the CAO's receipt of the grievance for emergency determination on January 25, 2018. The second stamp, dated January 31, 2018, corresponds to the counselor's receipt of this grievance on February 1, 2018 (Doc. 103 at 39).

started in his efforts, he failed to complete the process by submitting the grievance to the Grievance Officer (see above) and CAO for review. For these reasons, the Court finds Plaintiff's January 23, 2017 emergency grievance was not exhausted.

The Court next considers Plaintiff's grievance dated July 21, 2018. Plaintiff contends he submitted this grievance on three occasions, but was met with no response. Plaintiff asserts that on his third attempt, he submitted this grievance directly to the ARB with a letter concerning his previous attempts; however, the ARB returned the same without a decision on the merits directing Plaintiff to provide a copy of his counselor's, Grievance Officer's, and CAO's responses. The Court again does not find Plaintiff's testimony concerning his efforts to submit this grievance credible. The Court has reviewed Plaintiff's Cumulative Counseling Summary from September 3, 2016 through June 5, 2021, and finds that every other grievance identified in the record and referenced by the parties was logged in the Summary when it was received for review (*see* Doc. 111-1). Moreover, during the relevant time, Plaintiff was seen by a counselor on two occasions (June 30, 2018 and September 5, 2018), and an entry in the Summary indicated Plaintiff had "no other issues." There is no entry during this time wherein Plaintiff complained about not receiving responses to these grievances.

With regard to Plaintiff's non-emergency grievance dated January 23, 2018 regarding his request for boots, Plaintiff asserts he was not required to submit it to the Grievance Officer after he was notified by the counselor there were no boots in stock. Plaintiff cites *Thornton v. Snyder*, 428 F.3d 690 (7th Cir. 2005), and argues it is applicable because there was no possibility of any further relief via higher appeal. *Thornton* is not applicable here. In *Thornton*, the Seventh Circuit found that the inmate plaintiff did not need to appeal his grievance to higher channels after receiving the relief requested in his grievances. 428 F.3d at 697. Here, Plaintiff did not receive the relief he

requested as he asked to be provided with a pair of boots, and did not receive the same. The fact that Plaintiff was advised the clothing department did not have any boots in stock did not moot his request for relief. Plaintiff may have found it futile to seek further institutional review of his grievance because of this, but that is not the standard. Moreover, Plaintiff did seek other channels of review as he submitted his grievance to the ARB. Simply put, Plaintiff cannot rely on *Thornton* in this instance to excuse his failure to submit this grievance for review by the Grievance Officer, and the Court finds Plaintiff's January 23, 2018 grievance was not exhausted.

Plaintiff's April 5, 2018 grievance was also not exhausted as Plaintiff testified he took no further action after receiving the counselor's response, which is clearly not sufficient under the Administrative Code.

Finally, the Court considers Plaintiff's November 7, 2016 grievance. This grievance was reviewed by the counselor on November 30, 2016, and the Grievance Officer recommended that it be found moot on December 7, 2016. The CAO concurred with the Grievance Officer on December 12, 2016. Plaintiff signed off indicating he would appeal on January 3, 2017. It was received by the ARB on January 17, 2017, and returned because it was not submitted within the required 30-day timeframe. Plaintiff testified he placed this in the bars of his cell ready to be mailed on the date he signed it — January 3, 2017. Pursuant to the Illinois Administrative Code, an appeal of the CAO's response must be received by the ARB within 30 days after the date of the decision. 20 ILCS § 504.850(a). In this instance, the ARB received Plaintiff's appeal 36 days after the date of the CAO's decision. Other courts have found that short delays in the exhaustion process are not enough, without other proof or evidence, to show that a plaintiff has not exhausted his administrative remedies. *See Smith v. Brookhart, et al.*, Case No. 3:20-cv-830, 2022 WL 306837, at * 7 (S.D. Ill. Feb. 2, 2022) (finding a one-day delay in receipt of grievance by ARB did

not make grievance untimely). Here, Defendants failed to offer any evidence that Plaintiff did not mail his grievance on January 3, 2017, or that the delay in receipt by the ARB was attributable to Plaintiff. Thus, without some evidence from Defendant to dispute Plaintiff's contention that he mailed it with sufficient time for the ARB to receive it in a timely manner, the Court finds there is nothing else Plaintiff could do to exhaust this grievance.

In any event, the Court finds that even though Plaintiff's November 7, 2016 was fully exhausted, it does not exhaust against any Defendants in this lawsuit. Pursuant to 20 ILCS § 504.810(c), grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint. While the Seventh Circuit has interpreted this as requiring the inmate plaintiff to identify names only to the extent practicable, *see Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010), in this instance, Plaintiff makes no mention or reference to any individual. Indeed, Plaintiff merely sets forth general complaints that he was only provided one sheet, and no boots or laundry bag upon his arrival at Menard. This is not sufficient to put the prison on notice that Plaintiff was complaining about any action taken by Defendants Morris or Lashbrook related to their alleged failure to provide Plaintiff with proper footwear for wet weather conditions, at issue in Count IV. The Court would also be remiss not to point out a similar failing in each of Plaintiff's grievances that have already been discussed. Plaintiff's grievances have a common theme — he complains generally about the issues in this lawsuit, such as high temperatures in the cellhouse or Menard's failure to provide adequate cleaning supplies — but he fails to identify any particular individual whom he has now filed a lawsuit against. Each defendant in this action has been sued in their individual capacity and there are no policy and practice claims. As such, Plaintiff was required to identify or at least describe these defendants and the issues in this lawsuit

to properly exhaust the claims against them, as required under 20 ILCS § 504.810(c).

Finally, the Court notes that Defendant Hanna did not move for summary judgment on the issue of exhaustion, or seek to join in Defendants' Motion now before the Court. Defendant Hanna was identified and served with the complaint following the filing of Defendants' Motion. Pursuant to the Court's Initial Scheduling and Discovery Order, any new party only has 60 days from the date of their answer to file a motion for summary judgment for failure to exhaust administrative remedies. In this instance, Hanna filed his answer on October 25, 2021 (*see* Doc. 102). Thus, his time has passed to file a motion. Despite Defendant Hanna's failing, however, the Court finds no indication in the record that Plaintiff submitted any other exhausted grievance against Defendant Hanna and, as such, it must reach the same conclusion on exhaustion as to Defendant Hanna. Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment on the issue of exhaustion of administrative remedies will be granted in favor of Defendant Hanna. Any evidence opposing summary judgment under Rule 56(f) for the reasons provided **must** be filed by **March 14, 2022**.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Lashbrook, Morris, Epplin, and Simpson (Doc. 74) is **GRANTED**.

Defendants Lashbrook, Morris, Epplin, and Simpson are **DISMISSED WITHOUT PREJUDICE**. Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff is notified that summary judgment on the issue of exhaustion of administrative remedies will be granted in favor of Defendant Hanna. Any evidence opposing summary judgment under Rule 56(f) as to Defendant Hanna for the reasons provided **must** be filed by **March 14, 2022**.

**IT IS SO ORDERED.**

**DATED: February 10, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**